UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 2:21-CR-48 JD

JERRON DONTE WILLIAMS

## OPINION AND ORDER

Defendant Jerron Williams pleaded guilty to Counts 1 and 2 of the Indictment. In Count 1, he is charged with assaulting a U.S. Postal Service employee. In Count 2, which is at the heart of this Order, he is accused of discharging a firearm in furtherance of a crime of violence. Mr. Williams has moved to withdraw his guilty plea arguing that he received ineffective assistance of counsel in connection with his plea. (DE 93.) He submits that his then-counsel, John Cantrell, erroneously told him that, if he went to trial and was convicted of Count 2, he would be sentenced to a lifetime of imprisonment. Mr. Williams insists that, but for the erroneous advice, he would not have pleaded guilty to the charges. After the Government responded to the motion, and Mr. Williams opted not to reply, the Court held an evidentiary hearing. For the reasons below, the Court will deny the motion.

### A. Background

Mr. Williams was charged with assaulting a U.S. Postal Service employee in violation of 18 U.S.C. § 111(a) & (b) (Count 1); discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count 2); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3). (DE 17.) His family retained Mr. Cantrell to represent him as they had in a previous criminal case. Mr. Cantrell entered his appearance on

April 13, 2021. (DE 12.) Mr. Cantrell was Mr. Williams's attorney when the Government offered him a plea agreement in April 2023 and when he pleaded guilty to Counts 1 and 2 in May 2023. On October 2, 2023, Mr. Cantrell moved to withdraw from the case, citing the breakdown in the attorney-client relationship (DE 70). The Court granted the motion (DE 76), and attorney James Thiros took over the representation. A month before a scheduled sentencing hearing, Mr. Williams moved to withdraw his guilty plea.

### (1) *Mr. Williams's Testimony*

The Court held an evidentiary hearing on Mr. Williams's motion. At the hearing, Mr. Williams testified about his interactions and the advice he received from Mr. Cantrell before accepting the plea agreement and choosing to plead guilty:[1]

Mr. Williams is 34 years-old. (Hrg. Tr. at 15.)

Mr. Cantrell first brought to Mr. Williams the Government's proposed plea agreement in early April 2023. (*Id*. at 7–8.) They discussed the agreement in person. Mr. Cantrell told him that the minimum penalty for the offense charged in Count 2 (violation of § 924(c)) was 10 years of imprisonment and the maximum penalty was life. (*Id*. at 8.) He said that, if Mr. Williams went to trial and lost, he could be sentenced to 30 years. Mr. Williams inquired why he might receive such a long sentence, and Mr. Cantrell answered that this was due to his shooting and injuring a U.S. Postal Service employee. (*Id*. at 9.) Mr. Williams said he wanted to speak with his family about the offer, so Mr. Cantrell left the proposed plea agreement with him. Mr. Williams

---

[1] Mr. Williams has implicitly waived the attorney-client privilege over his relevant communications with Mr. Cantrell by asserting a claim which places Mr. Cantrell's advice at issue. *See Paters v. United States*, 159 F.3d 1043, 1047 n.6 (7th Cir. 1998) (quoting *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1998)); *see also Buckner v. United States*, No. 3:24-CV-48-DWD, 2024 WL 2111590, at *1 (S.D. Ill. Apr. 9, 2024) (applying *Garcia*).

reviewed the document, including the penalty provisions, before meeting with Mr. Cantrell again.[2] (*Id*. at 13–14.)

Mr. Cantrell returned in mid-April, and Mr. Williams told him that he conferred with his family and wanted to go to trial. Mr. Cantrell responded that he should not go to trial as he would be sentenced to life if he lost. (*Id*. at 10.) Mr. Williams protested saying he didn't kill anyone, but Mr. Cantrell insisted that the sentence would be life because the victim was a postal employee. (*Id*. at 10–11.) Despite his purported concern, he did not ask Mr. Cantrell why he had significantly increased the estimated sentence from the previous consultation. Fearing a potential life sentence, he agreed to plead guilty. Mr. Williams testified that he would not have signed the plea agreement but for Mr. Cantrell telling him that he would get a lifetime sentence if he lost at trial.

At the change-of-plea hearing, on May 3, 2023, the magistrate judge explained to Mr. Williams the possible penalties, including the penalty on Count 2, telling him that he was subject to a minimum of 10 years and a maximum of life. (*Id*. at 11–12.) Mr. Williams said he understood the penalties and said that no one had threatened him to plead guilty. Mr. Williams did not perceive Mr. Cantrell's admonition that he'd be sentenced to life if he lost at trial as a threat; he merely thought that Mr. Cantrell, as his attorney, advised him what would happen. (*Id*. at 12.) Mr. Williams also told the magistrate judge that no one "made any promise or assurance that is not in this plea agreement to persuade [him] to accept this agreement." (*Id*. at 16.) Finally,

---

[2] In relevant part, the Plea Agreement states: "I understand that the statutory mandatory minimum possible penalty that may be imposed upon me for my conviction of Count Two in the Indictment is a term of incarceration of not less than ten (10) years, and the maximum penalty that may be imposed is life imprisonment." (Plea Agreement, DE 41 ¶ 7(d).)

Mr. Williams told the magistrate judge that the plea agreement represented "any and all understandings [he had] with the government." (*Id*. at 15–16.)

### (2) *Attorney Cantrell's Testimony*

Mr. Cantrell testified next. He said Mr. Williams's family retained him because he had represented Mr. Williams in several criminal cases in the past. He indicated that he has practiced law for twenty-four years, much of that involving criminal defense. After reviewing the charges, Mr. Cantrell calculated the sentencing guidelines with respect to what Mr. Williams's sentence might be under various scenarios: if he pleaded guilty, went to trial, or went to trial and testified falsely. (*Id*. at 21.) After the Government offered its plea agreement, he calculated the guidelines for Counts 1 and 2 only. He estimated that, if Mr. Williams pleaded guilty, he could be imprisoned for about 13 years, but if he went to trial and lost, he could get about 18 years. (*Id*. at 22.) He might have been able to get 15 or 16 years "if things went magically well," but he was worried about a stiffer penalty because of the nationwide movement to protect postal workers. (*Id*.) He was also concerned about Mr. Williams wanting to testify and lying in order "to avoid the 924(c)" which he thought might increase his penalty to 20 or 30 years if he lost, "closer to 30 than 20." (*Id*. at 24–25.) Mr. Cantrell relayed this information to Mr. Williams when presenting the Government's offer (*Id*. at 24) and indicated overall they met five or six times.

Mr. Cantrell said he felt strongly that it was most prudent for Mr. Williams to accept the plea agreement: "[w]e had 13 on the plea, and the case is completely indefensible. He did something while he was on a couple-day bender, and he really needed to take the plea, and I felt that was my job to try to get him there." (*Id*. at 24–25.) Mr. Cantrell testified adamantly that he never told Mr. Williams that he would get life in prison, but only that the maximum penalty was

life. (*Id*. at 24.) Nor did he say that the minimum penalty was life. (*Id*.) In fact, outside of telling

Mr. Williams the maximum possible penalty under Count 2, the term "life in prison" never came

out of his mouth. (*Id*. at 26.) Although Mr. Cantrell acknowledged that he thought it was in Mr.

Williams's best interest to accept the plea agreement, he maintained that he would have never

told Mr. Williams that he would get life in order to get him to accept the plea agreement. He

explained that such representation would have been both dishonest and untrue:

> Well, I mean, it's dishonest, and it's untrue, and I wouldn't be doing my best to
> represent him if I told him a lie. I was just trying to get him to "yes." And I think
> that it would be an easy decision to make "yes" even if the difference was 5 years
> because the case is completely indefensible.
>
> So I was trying to get him to take something that was reasonable based on what he
> did and the facts and circumstances in the case, and the potential ramifications of
> him getting potentially 5 years more or 10 years more or 15 years more is enough
> to get somebody to plead guilty. So those potential ramifications that he was facing
> had he gone to trial and lost were enough to try to get him to be sensible and take
> this plea.

(*Id*. at 30.) Even then, Mr. Cantrell told Mr. Williams that it was ultimately his decision to make.

(*Id*.)

### B. Legal Standard

A defendant has no right to withdraw a guilty plea after the court accepts it, unless he

"can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B);

*United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). One example of a fair and just

reason is that the defendant did not make the plea knowingly and voluntarily due to ineffective

assistance of counsel. *United States v. Barr*, 960 F.3d 906, 918 (7th Cir. 2020). To show

ineffective assistance in this context, the defendant must show that (1) counsel's performance

was objectively unreasonable, and (2) but for that deficient performance, the defendant would not have pleaded guilty. *Id.*

### C. Discussion

Mr. Williams's argument for ineffective assistance is that Mr. Cantrell erroneously told him that, if he was convicted at trial, he would be sentenced to a lifetime of imprisonment. Mr. Williams insists that, had Mr. Cantrell not given him this false advice, he would not have pleaded guilty to the charges. Consequently, he believes there's a fair and just reason for withdrawing his guilty plea. This argument has no merit as it's not supported by evidence.

At the evidentiary hearing, the Court has considered the weight to be given the evidence, including the credibility of Mr. Williams and Mr. Cantrell. In assessing credibility, the Court had the opportunity to observe the witnesses and has considered, among other things, their demeanor; their knowledge about the matters subject to their testimony; the potential for bias; and the plausibility of their testimony.[3] Having done that, the Court credits Mr. Cantrell's testimony; conversely, it discredits Mr. Williams testimony to the extent that it conflicts with Mr. Cantrell's on the core issue of whether Mr. Cantrell told him that he would be sentenced to life if he lost at

---

[3] At the hearing, both sides recognized that Mr. William's motion boils down to credibility of the two witnesses. Mr. Thiros conceded as much in his argument in support of the motion:

> MR. THIROS: Well, Your Honor, clearly the Court has before it two conflicting versions of what occurred, two conflicting testimonies, two versions of testimony regarding whether or not the statement was made.
> Mr. Williams said, "That's what he told me."
> Mr. Cantrell says, "I didn't say that."
> It's a credibility issue, Your Honor. In the event that the Court decides that Mr. Williams is more credible than Mr. Cantrell, then I believe the Court has solid grounds on which to grant the motion to withdraw the plea.

(Hrg. Tr. at 31.) While opposing the motion, the Government echoed Mr. Thiros:

> MR. SHEEHAN: Your Honor, the defendant has not shown that he has fair and just reason to withdraw his guilty plea. Specifically, we have conflicting testimony here from Mr. Cantrell who, I would argue, is far more credible. He's not had the self-serving justification that Mr. Williams does in trying to withdraw his guilty plea here.

(*Id*. at 32.)

trial. In light of Mr. Cantrell's testimony, and because Mr. Williams presented no credible evidence that Mr. Cantrell acted in bad faith, the Court finds that Mr. Williams has failed to prove that Mr. Cantrell's performance was objectively unreasonable.

The Seventh Circuit has noted that counsel's duty during plea negotiations requires them to (1) learn all the facts of the case and make an estimate of the likely sentence, (2) communicate the results of that analysis to their client, and (3) undertake that scrutiny in good faith. *United States v. Gwiazdzinski*, 141 F.3d 784, 790 (7th Cir. 1998). In other words, counsel must make a good-faith effort to estimate the likely sentence. *See United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005) ("As applied in the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence.") The good-faith effort described in *Gwiazdzinski* requires a correct estimate of applicable mandatory minimum or legal maximum sentences. *See Gaylord v. United States*, 829 F.3d 500, 508–09 (7th Cir. 2016) (ordering remand to conduct an evidentiary hearing based on alleged ineffective assistance where the record was unclear why counsel opted against challenging a mandatory minimum sentence and did not advise his client on his choice either). "[C]ounsel's alleged miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). "A defense attorney cannot promise his client a particular sentence; all he can do is make a prediction. . . . In this circuit, an attorney's 'mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel claim. *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). Proving the lack of good-faith effort is a stringent standard that places a heavy burden on

the defendant. *See Cieslowski*, 410 F.3d at 359 (summarizing cases where mischaracterizations of sentencing consequences was not enough to constitute ineffective assistance of counsel).

The Court believes Mr. Cantrell testified truthfully[4] that, after the Government offered the plea agreement, he calculated the guidelines range and estimated that, if Mr. Williams accepted the plea agreement, he would likely be sentenced to about 13 years of imprisonment. On the other hand, he was likely to get about 18 years if he was convicted at trial. He explained this to Mr. Williams when he brought him the proposed plea agreement, adding that he may possibly get 15 or 16 years after trial "if things went magically well." Both Mr. Williams and Mr. Cantrell testified that Mr. Cantrell left the proposed plea agreement with Mr. Williams, and Mr. Williams said that he would read it before their next meeting.

When they met again, Mr. Williams said he wanted to go to trial. Mr. Cantrell believed that Mr. Williams's case was "completely indefensible" (Hrg. Tr. at 24 & 30) and that it was unreasonable to proceed to trial because he would likely face a much stiffer sentence if convicted. Mr. Cantrell was also concerned about Mr. Williams's desire to testify, and potentially lie, as a way to avoid being convicted under the § 924(c) charge. According to Mr. Cantrell, if the jury did not believe him and he was convicted, his possible sentence would be close to 30 years. (*Id.* at 25.) Mr. Cantrell explained this to Mr. Williams and met with him three or four other times trying to convince him that accepting the plea agreement was in Mr. Williams's best interest. Ultimately, though, Mr. Cantrell explained that it was Mr. Williams's decision to make. But Mr. Cantrell did not tell Mr. Williams that he would get life if he lost at

---

[4] Mr. Cantrell maintained a calm demeanor during his testimony. He was not evasive, and he did not appear to minimize or exaggerate his conduct. His testimony was consistent throughout the hearing, both under direct and cross-examination. He remembered the particulars of the meetings he had with Mr. Williams, and was forthright in acknowledging what he did not know. While no attorney wants to be undermined by his client in a public forum, Mr. Cantrell did not exhibit bias against Mr. Williams, at least not to the extent that the truthfulness of his testimony could be questioned.

trial. Moreover, Mr. Cantrell met with Mr. Williams five or six times before the change-of-plea hearing, which afforded sufficient opportunity for Mr. Williams to question him. But Mr. Williams never questioned him, which is consistent with Mr. Williams own testimony.

In light of this testimony, which the Court credits, there's nothing in the record that would suggest that Mr. Cantrell failed to learn all the facts of the case and estimate a likely sentence, failed to communicate the results of his analysis to Mr. Williams, or failed to undertake the scrutiny in good-faith. *See Gwiazdzinski*, 141 F.3d at 790 (explaining counsel's duties during plea negotiations). Mr. Cantrell knew the facts and applied them to the guidelines in good faith. While he did appear to estimate the sentence at the high end of the possible sentences, he explained that he did so because there is a national emphasis to protect postal workers. And there's nothing showing that his concern about Mr. Williams perjuring himself was unjustified. *See Martinez*, 169 F.3d at 1053 ("Thus, the question is whether these were 'mere inaccurate predictions' or whether they were something more invidious.") In other words, Mr. Williams has not demonstrated that Mr. Cantrell's conduct or rationale contradicts *Gwiazdzinski* in any way.

Mr. Williams's testimony to the contrary is unconvincing. Mr. Williams claims that he never questioned Mr. Cantrell when he changed his sentencing estimate from 30 years, as expressed during the first meeting, to a sentence of life during the second and later meetings. Having observed Mr. Williams testify and heard him articulate his opinions and explain in his own words the interplay between the subsections of § 924 (*see, e.g.*, Tr. Hrg. at 15 ("I've been doing a lot of research on the 924(c), and I know it's, like, a lot of different – it's the 924(c), which is the (1)(A), which has the 5 years, 7 years, and 10 years, and then that's the 10 to life. And then I know the 924(j), that actually involves murder, and that's what carries the actual life sentence. If I'm not correct, let me know."), the Court finds that Mr. Williams has the necessary

intelligence and a strong sense of self-preservation so that it is unlikely that he would not have questioned Mr. Cantrell about the new prediction. What's more, Mr. Williams is not a novice in the criminal justice system. He is 34 years-old and his criminal history began at age 18 and, since then, he's been convicted of several felony and multiple misdemeanor offenses. He pleaded guilty in all those cases, so it's safe to assume that Mr. Williams was familiar with plea negotiations, the prosecutor's and the defense attorney's roles, as well as the overall process. In fact, Mr. Cantrell represented him twice before, so Mr. Williams had some familiarity with him as well. Had Mr. Cantrell told him that he would be sentenced to life if convicted by the jury, the Court believes Mr. Williams would not have accepted that representation without a sustained inquiry; yet that's his testimony and it undercuts his claim.

In addition, at the change-of-plea hearing Mr. Williams assured the magistrate judge that no one "made any promise or assurance that is not in this plea agreement to persuade [him] to accept [the plea agreement]." Although Mr. Williams now asserts that Mr. Cantrell did assure him that he'd get life if he did not accept the plea agreement, "the record of a Rule 11 proceeding is entitled to a 'presumption of verity' . . . and the answers contained therein are binding." *Martinez*, 169 F.3d at 1054 (quoting *United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994)). That is to say, Mr. Williams's current testimony, which contradicts what he said at the change-of-plea hearing, is greatly suspect. *Id.* ("We will not force an attitude of skepticism on [Rule 11 hearings] which would eliminate the presumption of truthfulness expected from response given under oath." (quoting *Gwiazdzinski*, 141 F.3d at 788)). When a defendant asserts under oath that his guilty plea is not conditioned on anyone's sentencing predictions and is given multiple opportunities to reveal the alleged improper representations, the Court is entitled to rely on what he said, unless he can prove otherwise. *Id.* Mr. Williams has failed to do that here.

One other thing. To the extent that Mr. Williams may be implying that Mr. Cantrell told him that his minimum penalty would be life if he lost at trial, there's no evidence for that contention. Indeed, there's no basis to think that Mr. Williams ever thought that the minimum penalty was life. After all, he himself testified that, upon presenting the government's proposed plea agreement, Mr. Cantrell told him that the penalty for § 924(c) was "10 [years], and the maximum being life." (Hrg. Tr. at 8.) In addition, Mr. Williams said that Mr. Cantrell left the proposed plea agreement with him, and he read it. The Plea Agreement unambiguously states the minimum and maximum penalties under Count 2:

> Because I discharged a firearm, I understand that the statutory mandatory minimum possible penalty that may be imposed upon me for my conviction of Count Two in the Indictment is a term of incarceration of not less than ten (10) years, and the maximum penalty that may be imposed is life imprisonment;

(Plea Agreement, DE 41 ¶ 7(d).) Again, Mr. Williams exhibits the necessary intelligence to suggest that he read and understood the penalties provision, and there's nothing indicating that he was told that a different statute was in play if he went to trial. Finally, the magistrate judge reiterated at the change-of-plea hearing the possible penalties under Count 2 which Mr. Williams asserted to have understood. Mr. Williams's sworn statements are presumed truthful, *see Bridgeman*, 229 F.3d at 592 (". . . [the defendant's] own statements at the change of plea hearing . . . are presumed truthful."), and there's nothing here to dispel that presumption.

To sum up, Mr. Williams failed in his burden to demonstrate that Mr. Cantrell told him he would receive a life sentence if he lost at trial or that any of the representations Mr. Cantrell acknowledges were objectively unreasonable[5] and thus failed to establish "a fair and just reason for requesting the withdrawal [of his guilty plea]." Fed. R. Crim. P. 11(d)(2)(B). *See United*

---

[5] Because Mr. Williams has not prevailed under the first prong of the test for determining ineffective assistance of counsel, the Court need not proceed to the second prong.

*States v. Stapleton*, 56 F.4th 532, 538–539 (7th Cir. 2022) ("'[T]he defendant bears a heavy burden of persuasion' on a motion to withdraw his guilty plea—especially when, as in this case, the judge conducted a proper Rule 11(b) colloquy. The purpose of the Rule 11(b) colloquy is to confirm that the defendant has made a knowing and voluntary decision to plead guilty; '[o]nce a proper Rule 11 colloquy has taken place, the 'fair and just . . . escape hatch is narrow.'" (quoting *United States v. Collins*, 796 F.3d 829, 834–835 (7th Cir. 2015)).

### D. Conclusion

Accordingly, the Court DENIES Mr. Williams's motion to withdraw the guilty plea (DE 93).

SO ORDERED.

ENTERED: September 4, 2024

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court